**Motion for En Banc Reconsideration Denied and Dissenting Opinions on Order filed September 17, 2020.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-17-00732-CV

---

## HARRIS COUNTY, TEXAS AND KEVIN VAILES, Appellants

## V.

## BARBARA COATS AND ALI AMRON, Appellees

---

**On Appeal from the 80th Judicial District Court of
Harris County, Texas
Trial Court Cause No. 2012-55551**

---

### DISSENTING OPINION FROM DENIAL OF EN BANC RECONSIDERATION

The majority opinion neuters the protections set forth in *Monell*—protections carefully designed to ensure that citizens can hold local government and other municipalities accountable for violating their clearly established constitutional rights through unconstitutional policies, practices, customs, or procedures. *See generally*

*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690–91 (1978). Therefore, I dissent.

Harris County can be held financially responsible via 42 U.S.C. section 1983 for actions of a final policymaker who has "the responsibility for . . . setting policy in any given area of a local government's business." *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 125 (1988). An official can become responsible under state law for making policy either directly (by legislative enactment) or indirectly (by delegation). *Pembaur v. Cincinnati*, 475 U.S. 469, 483 (1986).

Harris County is divided into eight precincts, each of which elects its own constable; while the Commissioner's Court funds the salaries of each precinct, the elected constable has unsupervised and final authority to terminate the employment of any deputy who does not conform to department policy. *Harris Cty. v. Nagel*, 349 S.W.3d 769, 793 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) ("[C]onstable is the *only* official who has supervisory authority over the deputies and is responsible for their official conduct as a matter of state law.") (emphasis added) (citing Tex. Loc. Gov't Code § 86.011(c) and § 151.001), *cert denied*, 134 S. Ct. 117 (2013). Similarly, the Harris County Commissioner's Court lacks the authority to appoint or terminate deputies in any precinct. *Id.* (citing Tex. Loc. Gov't Code § 151.002 and § 151.003).

Here, Constable Hickman and other county representatives testified that Hickman was the "number one guy" in Precinct Four as to their policies and these are not reviewed by the sheriff. There is no evidence that any person other than the Constable of Precinct Four is the person who can hire and fire individual deputies.

A court's task is to "identify those officials or governmental bodies who speak with final policymaking authority for the local government actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). Presented with this

precise question, both this court and our sister court have held that Harris County constables are policymakers for Harris County. *Nagel*, 349 S.W.3d at 793; *Walsweer v. Harris Cty.*, 796 S.W.2d 269, 273 (Tex. App.—Eastland 1990, writ denied) ("As in *Pembaur*, the record is clear that Constable Maxon had the authority to establish county policy as to the training and certification of the deputies in his precinct. The [Harris County] Commissioners Court had delegated that authority to the constables by acquiescing in each constable's hiring and training policies . . . . The county cannot escape liability by now arguing that the constable did not have policy-making powers in his portion of the county."), *cert. denied*, 502 U.S.866 (1991); *see also* Tex. Gov't Code 86.021(b) ("A constable may execute any civil or criminal process throughout the county in which the constable's precinct is located and in other locations as provided by the Code of Criminal Procedure or by any other law.").

The panel opinion also reverses the jury's verdict and requires an expert to opine about the cause of death and to exclude "with reasonable certainty the other plausible cause that Jamail died from acute cocaine toxicity." The jury was presented with evidence from Amron's expert along with the county's expert. The charge asked the jury to determine whether any individual or entity "proximately caused" the death and further instructed that "there may be more than one proximate cause of an occurrence." The jury weighed the expert testimony and found that the deputy's boot over Amron's mouth and nose was a substantial factor in his death. Even while admitting that we should measure the sufficiency of the evidence by the charge given, the panel then reformulates the analysis and reverses the jury verdict because Amron did not disprove every other potential cause of death besides suffocation. The jury was not charged with finding one cause of death to the exclusion of all others. It was charged with determining whether the deputy's actions proximately caused Amron's death.

The panel opinion also ignores the legal sufficiency review standard that instructs appellate courts to "credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). The panel did not properly weigh the presented evidence to determine whether it was legally sufficient to uphold the jury's verdict. Nor did the panel adhere to the longstanding ideals that jurors may believe all, some, or none of a witness's testimony and may even disregard uncontradicted and unimpeached testimony from disinterested witnesses. Instead, the panel substituted its opinion and view of the evidence for that of the jury.

The panel reached its underlying decision by reformulating the parties' arguments, focusing on unpreserved issues, and substituting its judgment for the jury's. In doing so, the panel stripped away the vital protections that safeguard the people's constitutional rights from being violated by their own government.

Finally, this case reveals a systemic flaw in the current design of our review as the votes to grant and the votes to deny *en banc* reconsideration are tied based upon the fact that a colleague recused herself from the matter. In such circumstances, it would benefit the citizens of Texas, whom we all seek to serve, for the Texas Rules of Appellate Procedure to allow an additional justice to be temporarily appointed to the relevant court of appeals. Here, the unavailability of a deciding vote means that this erroneous precedent goes into effect based on a tie instead of a meaningful vote. Here, the unavailability of a ninth vote is even more damaging to the rule of law because the panel's original opinion was issued contrary to otherwise binding precedent from *Nagel*; under these circumstances, the *en banc* court is effectively deprived of the ability to correct the panel's impermissible departure from binding law through no fault of the parties. This arrangement fails to benefit the citizenry, the courts, and *stare decisis*.

/s/    Frances Bourliot
Justice

En banc court consists of Chief Justice Frost and Justices Christopher, Wise, Jewell, Bourliot, Zimmerer, Spain, and Poissant. (Justice Hassan not participating).

Justices Bourliot, Zimmerer, Spain, and Poissant voted to grant en banc reconsideration.

Justice Bourliot filed a dissenting opinion in which Justices Zimmerer and Spain joined, and Justice Poissant joined in part on the merits only.

Justice Spain filed a dissenting opinion in which Justices Bourliot, Zimmerer, and Poissant joined.

Justice Poissant filed a dissenting opinion, in which Justice Zimmerer joined.